UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAURENCE STELLER,

               Plaintiff,

v.                                              **Case No.:**

THE BNY SEPARATION PAY PLAN (
Plan No. 557), THE GLOBAL LEAD
OF PEOPLE GOVERNANCE AND INTERNAL
CONTROLS as Plan Administrator
and THE BANK OF NEW YORK
MELLON CORPORATION, as Plan Sponsor,

               Defendants.



## **ERISA COMPLAINT**

      Plaintiff, LAURENCE STELLER, as and for his Complaint against THE BNY SEPARATION PAY PLAN (Plan No. 557), THE GLOBAL LEAD OF PEOPLE GOVERNANCE AND INTERNAL CONTROLS, as Plan Administrator, and THE BANK OF NEW YORK MELLON CORPORATION, as Plan Sponsor (collectively, "Defendants"), alleges as follows:

### **Nature of the Action**

1. This is an action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), to recover severance benefits due under the BNY Separation Pay Plan (Plan No. 557). Plaintiff challenges the Plan Administrator's determination that his separation was for "unsatisfactory job performance" and therefore not a Qualifying Termination under the Plan. Plaintiff seeks benefits due under ERISA § 502(a)(1)(B) and appropriate equitable relief under ERISA § 502(a)(3), together with pre- and

post-judgment interest, reasonable attorney's fees, and costs pursuant to ERISA § 502(g)(1).

## The Parties

2. Defendant BNY SEPARATION PAY PLAN (Plan No. 557) (the "Plan") is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), providing severance benefits to eligible employees who experience a "Qualifying Termination" generally defined as an involuntary termination *"unrelated to performance."* The Plan is administered in New York, New York.

3. Defendant THE GLOBAL LEAD OF PEOPLE GOVERNANCE AND INTERNAL CONTROLS, located at 240 Greenwich Street, 19th Floor, New York, NY 10286, is the Plan Administrator and Named Fiduciary under ERISA §§ 3(16) and 402(a)(2), 29 U.S.C. §§ 1002(16), 1102(a)(2), responsible for plan administration, benefit determinations, and appeals.

4. THE BANK OF NEW YORK MELLON CORPORATION is the Plan Sponsor and Employer under ERISA § 3(5), 29 U.S.C. § 1002(5), and funds the benefits payable from the general assets of the company.

5. Plaintiff LAURENCE STELLER ("Plaintiff") is an individual residing in the State of Arizona. At all relevant times, Plaintiff was employed by The Bank of New York Mellon Corporation ("BNY Mellon") and was a participant in the Plan

6. Some of the acts complained of herein occurred within the jurisdiction of the United States District Court for the Southern District of New York.

## Jurisdiction and Venue

7. The Defendants had a severance plan which provided employees, such as Plaintiff, with a severance benefits Plan in addition to their salary.

8. The Plan is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29

U.S.C. § 1002(1), providing severance benefits to eligible employees who experience a "Qualifying Termination," generally defined as an involuntary termination *"unrelated to performance."*

9. This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331, because this action arises under the laws of the United States.

10. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in New York, New York, the Plan Administrator and Named Fiduciary reside and perform their duties in this District, and the decisions giving rise to the denial of Plaintiff's benefits were made here.

11. Plaintiff is, and at all relevant times was, a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

12. At all times, the Plaintiff is a qualified participant in the severance plan pursuant to 29 U.S.C. 1132.

## Factual Allegations

13. Plaintiff Laurence Steller was employed by The Bank of New York Mellon Corporation ("BNY") or its predecessors from 1997 until his involuntary termination on February 10, 2025.

14. Plaintiff's employment fell within the scope of the Plan, an employee welfare benefit plan providing separation pay to eligible employees who experience a "Qualifying Termination".

15. Under the Plan (§ "Qualifying Termination"), a participant is eligible for separation pay upon "an involuntary termination of employment … as a result of a job elimination, reduction in force, or other business reason not related to individual performance."

16. The Plan expressly excludes employees whose termination occurs because the Employer

"notifies the Plan Manager that the Employee's termination occurred as a result of the individual's unsatisfactory job performance, as determined by the Employer in its sole and absolute discretion."

17. BNY classified Plaintiff's termination as "unsatisfactory job performance." Plaintiff does not challenge BNY's right to terminate his employment, but he disputes the accuracy and good-faith basis for that classification.

18. The denial of Plaintiff's severance benefits, based solely on an unsubstantiated and pretextual claim of "unsatisfactory performance," is arbitrary, capricious, an abuse of discretion, and violates the terms of the Plan and ERISA as set forth in detail below.

19. In March 2024, Mr. Steller was transitioned from the Subaccounting department to the Enterprise Change Hub (ECH) under the nominal management of Ms. Antonia Polcini. Despite this administrative change, Mr. Steller's duties remained fully allocated to Subaccounting projects, and his day-to-day work continued to be directed and supervised by Ms. Beth Goldberg, his former Subaccounting manager. Ms. Polcini had little to no direct involvement in his daily work, projects, or performance oversight. The continued supervision by Ms. Goldberg, and the lack of any direct observation by Ms. Polcini, are confirmed in writing by Mr. Gunavardhan Nimmagadda, Head of Subaccounting, on May 28, 2024.

20. The documentation of Mr. Steller's performance throughout 2024 shows that he met all of the expectations and goals that were outlined for him. Yet, on January 16, 2025, Mr. Steller received a year-end performance review from Ms. Polcini rating his performance as "Partially Met Expectations" in two categories and "Met Expectations" in one, with no "Unsatisfactory" ratings. This review, which he formally contested through a Human Resources Complaint dated February 7, 2025, was used as the sole basis for the termination of his employment on February 10, 2025, and the subsequent denial of severance benefits.

4

21.     The 2024 year-end performance review is the first documentation or notice to him in Mr. Steller's 28 years of service of a performance deficiency.  The final review is also contradictory to Ms. Polcini's own 2024 mid-year review that rated his performance as "On Track" with commendations for delivering results and strong communication.  Mr. Steller was never placed on a performance improvement plan, nor was he given any formal coaching or prior notice of performance concerns before receiving the year-end review.

22.     Although Ms. Polcini was listed as Mr. Steller's manager within the ECH organization, she did not serve as his functional supervisor. She had no direct day-to-day oversight of his work and did not observe or interact with him in a manner that would allow her to assess his actual job performance. Instead, Ms. Beth Goldberg functioned as his *de facto supervisor*, providing daily direction, feedback, and performance input based on her firsthand knowledge of his Subaccounting assignments. To that point, Ms. Polcini sought the input of Ms. Goldberg when she was preparing the year-end evaluation.  Ms. Goldberg provided detailed positive feedback for Mr. Steller's year-end review, addressing how Mr. Steller met or exceeded all the expectations for his role, including noting his proactive contributions.

23.     In a glaring display of bad faith, Ms. Polcini chose to ignore the entirely positive feedback provided by Ms. Goldberg. Instead, she sought negative input on a predetermined deficiency, for which Mr. Steller had no notice, that he failed to be proactive.  While Ms. Goldberg, who interacted with Mr. Steller daily, noted that he was proactive, Ms. Polcini still proceeded to base his negative year-end review on this basis, without any further detail or explanation.  Simply, for 2024, Mr. Steller met his performance expectations as confirmed by the individual who actually supervised him, Ms. Beth Goldberg, whose role as his functional supervisor gives her assessment far greater evidentiary weight than that of Ms. Polcini, who lacked any direct knowledge of his work.  He was

5

terminated solely on the subjective statement of Ms. Polcini, without any further evidence or documentation to support her negative review.

24. Mr. Steller has also refuted the specific allegation of his alleged performance deficiency by describing in detail his job duties for 2024, his actions in meeting the defined expectations, and the lack of any basis for Ms. Polcini to find that he was not meeting performance expectations.

25. The Plan Manager denied Plaintiff's severance claim based solely on the Employer's notification of "unsatisfactory performance," without reviewing or requesting supporting documentation and without addressing contradictory evidence.

26. While it is acknowledged that the Plan provides BNY with discretion to terminate an employee based on their job performance, BNY cannot abuse that discretion. By relying solely on an unsupported label of "unsatisfactory job performance," and by disregarding objective evidence of satisfactory work and procedural fairness, Defendants acted arbitrarily and capriciously and in violation of ERISA § 502(a)(1)(B).

27. Further, an independent sufficient basis for the reversal of the denial of Mr. Steller's severance benefits under the Plan, and additional evidence of bad faith, is BNY's failure to provide the entire administrative record upon request.

28. This withholding of critical evidence violates an employee's rights under ERISA § 503 and 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8), and the Plan's own terms (pages 14–15). This refusal gives rise to the inference that the rationale for his termination lacks credible documentation and cannot withstand scrutiny. It also warrants an adverse inference against the Plan Manager in any judicial review, particularly in light of the Plan's ERISA-based obligation to produce relevant documents and ensure a full and fair review, as defined by regulation.

29. Mr. Steller has repeatedly requested the entirety of the relevant documents to his claim,

yet, as of May 27, 2025, the Plan Manager formally responded to his May 22 deficiency letter by stating that it does not intend to produce any additional documents, asserting that his requests "are not part of the administrative record." Mr. Steller has detailed the specific relevant records that BNY failed to produce in both his communications to BNY and also on this appeal. (See May 28, 2025 Appeal Letter at Point II.C). This failure to produce the relevant administrative record permits an adverse inference as to the basis for the denial and is additional evidence of BNY's bad faith in this Claim.

30. At all times hereinafter mentioned, Plaintiff should have been qualified and entitled to severance benefits pursuant to the Plan.

31. The continued denial of Plaintiff's rights under the guise that he could not perform his job responsibilities deprives him of severance benefits and is arbitrary, illegal, capricious, unreasonable, and contrary to 29 U.S.C. 1001 et. seq. and is not supported by substantial evidence.

32. Plaintiff has exhausted all administrative remedies available to him under the policy.

33. Defendant's denial of the Plaintiff's claim was capricious in that it was unpredictable, as it blatantly ignored the substantial evidence Plaintiff submitted.

34. As a direct and proximate result of the actions by Defendant, Plaintiff has incurred attorneys' fees in an amount not yet known to Plaintiff.

35. As a direct and proximate result of the actions, Plaintiff has sustained damages in an amount not now known to Plaintiff but on information and belief, such damages will approximate the amount of the benefits due Plaintiff in accordance with the severance plan.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (ERISA Section 510)

36. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 35 as if set forth herein.

37. Under the Plan, an employee whose employment is involuntarily terminated for reasons "unrelated to performance" is eligible for separation pay as a "Qualifying Termination." Plan § 5. The Plan excludes only those terminations where "the Employer notifies the Plan Manager that the Employee's termination occurred as a result of the individual's unsatisfactory job performance, as determined by the Employer in its sole and absolute discretion." Plan § 5.

38. In January 2025, Plaintiff received a year-end performance review rating his performance as "Partially Met Expectations" in two categories and "Met Expectations" in one, with no "Unsatisfactory" ratings. This review was used as the sole basis for his termination on February 10, 2025, and the subsequent denial of severance benefits.

39. BNY classified Plaintiff's termination as "unsatisfactory job performance," yet the record contains no evidence supporting that classification and substantial evidence to the contrary, including: a mid-year 2024 review rating "On Track," no performance discipline or warnings, approved timesheets showing 100 percent Subaccounting work, and positive feedback from manager Beth Goldberg.

40. Notwithstanding this fact, Defendant terminated Plaintiff's employment on the pretext that it was a disciplinary "for cause" termination, for the purpose of interfering with any right to which he would become entitled under the severance plan.

41. Plaintiff duly appealed the denial of severance determination, dated April 30, 2025 and the appeal was denied. (See Exhibit "A").

42. The Plan Manager denied Plaintiff's claim without reviewing the evidence submitted in

support of his appeal—including his mid-year 2024 "On Track" review, contemporaneous emails confirming his continued Subaccounting assignments, and the positive feedback from his actual supervisor, Ms. Beth Goldberg—and without requesting any supporting documentation for BNY's "unsatisfactory performance" classification. The decision therefore lacked a reasoned and informed evaluation of the facts.

43. Plaintiff has exhausted all administrative remedies to obtain the benefit as required by ERISA prior to bringing this suit.

44. The severance program created pursuant to H.R. Policy had intended beneficiaries.

45. Under the Plan, Plaintiff's involuntary termination met the definition of a Qualifying Termination, and he was therefore entitled to severance benefits.

46. The interference with Plaintiff's rights to which he may be entitled to under the Severance Plan was a violation of ERISA § 510, 29 U.S.C. 1140, and ERISA § 502 (a)(1)(B), 29 U.S.C. 1132(a)(1)(B).

**PLAINTIFF'S SECOND CLAIM FOR RELIEF**
**(ERISA Section 502 (a)(1)(B))**

47. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 46 as if set forth herein.

48. The Severance Plan has an administrative scheme that should have enabled Plaintiff, as well as the other participants, to receive the severance benefit.

49. The Plan Administrator determined who would receive the benefit, and there was a mechanism in place that provided the source of the funding of the benefit to the intended beneficiaries.

50. Defendants denied Plaintiff's request for severance benefits under the BNY Separation Pay Plan (Plan No. 557). (Exhibit "A")

51. Plaintiff has exhausted all administrative remedies to obtain the benefit as required by ERISA prior to bringing this suit.

52. The failure to provide Plaintiff severance benefits is a violation of ERISA §502 (a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty – ERISA §§ 404(a) and 502(a)(3))

53. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54. Under ERISA § 404(a), 29 U.S.C. § 1104(a), each Plan fiduciary is required to discharge its duties solely in the interest of participants and beneficiaries, for the exclusive purpose of providing benefits, and also in accordance with the documents and instruments governing the Plan, using the care, skill, prudence, and diligence of a prudent fiduciary.

55. Defendants, acting as fiduciaries of the Plan, breached those duties by:

   (a) Failing to provide Plaintiff with all documents relevant to his claim and appeal, in violation of ERISA § 503 and 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8);

   (b) Failing to conduct a full and fair review of Plaintiff's claim and appeal;

   (c) Ignoring evidence favorable to Plaintiff while relying exclusively on unsupported assertions of "unsatisfactory performance"; and

   (d) Failing to act with loyalty, impartiality, and diligence toward Plaintiff as a Plan participant.

56. As a result of these fiduciary breaches, Plaintiff has been denied benefits due under the Plan, suffered delay in payment, and incurred additional losses, including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment in his favor and against Defendants as

follows:

(a) Declaratory relief determining that Plaintiff was eligible for the severance benefit and awarding Plaintiff such severance benefit in accordance with the terms of the Plan.

(b) Restitution consisting of the severance payments the Plaintiff failed to receive to date, and interest on such payments.

(c) An order compelling Defendants to produce the complete administrative record and all documents relevant to Plaintiff's claim and appeal.

(d) A declaration that Defendants breached fiduciary duties under ERISA.

(e) Equitable restitution or surcharge for losses caused by such breaches;

(f) Such other equitable and injunctive relief as the Court deems just and proper.

Dated: New York, New York
October 23, 2025

> STEWART LEE KARLIN
> LAW GROUP, PC
>
> _____
> STEWART LEE KARLIN, ESQ.
> Attorneys for Plaintiff
> 111 John Street, 22 Fl.
> New York, NY 10038
> (212) 792-9670